## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No.: 3:23-cv-0147-BJD-JBT

ANTHONY CROTHERS,

               Plaintiff,

   vs.

BLUM HEALTH PLLC, a Florida
limited liability company, and
NATHALIE BLUM, an individual,

               Defendants.

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Anthony Crothers ("Dr. Crothers" or "Plaintiff") hereby asks the Court to enter a preliminary injunction against Defendants Blum Health PLLC and Nathalie Blum (collectively, "Defendants"). The factual and legal grounds for this request are set forth below.

### MEMORANDUM OF LAW AND FACT

**A. Factual Background**

Dr. Crothers (also affectionately known as "Doc Tony") is a practicing chiropractor who owns and operates three chiropractic clinics in the Jacksonville, Florida area. Dkt. 1, ¶ 9. Since approximately May of 2011, Dr. Crothers has been offering his chiropractic services under or in connection with the trademark DOC TONY ("the Registered Mark"). Dkt. 1, ¶ 10. The Registered Mark is embodied in U.S. Trademark Reg. No. 6,079,316 ("the '316 Registration") on the Principal Register in connection with "Chiropractic Services; Chiropractic services for individuals suffering from injuries or exacerbation of previous conditions; Chiropractics; Physical therapy evaluation, identification, and management of movement dysfunction to restore, maintain, and promote optimal physical function

preventing the onset, symptoms and progression of impairments, functional limitations, and disabilities resulting from disease, disorders, conditions, or injuries; Providing information relating to chiropractics" in International Class 044 ("the Registered Services") and having a registration date of June 16, 2020. Dkt. 1, ¶ 11. Dr. Crothers markets the Registered Services online and in digital media, social media, and printed marketing materials. Dkt. 1, ¶ 14.

Defendants are direct competitors of Dr. Crothers', providing competing and identical healthcare services, i.e., chiropractic services, in the same geographic region, i.e., the Jacksonville, Florida area. Dkt. 1, ¶ 19. In or around January of 2023, Dr. Crothers became aware of Defendants' unauthorized use of the Registered Mark as a Google Adword and in digital advertisements in a concerted and pointed effort to: (a) detract from Dr. Crothers' goodwill and reputation, and (b) cause prospective and/or actual patients of Dr. Crothers or those seeking chiropractic services to visit Defendants' www.chiropractorjax.com website ("the Blum Health Website") and ultimately retain Defendants as their chiropractor. Dkt. 1, ¶ 20. Specifically, Defendants' digital advertisements prominently feature the Registered Mark at the forefront thereof, e.g., "Doc Tony for Injury Solutions – Don't Wait, Call Us.", "Doc Tony for Injury Solutions – Jacksonville Chiropractor", etc. *See* Dkt. 1-2, at 17-23.

On February 8, 2023, Dr. Crothers filed the Complaint in this case, asserting claims of federal trademark infringement (Count I), trademark counterfeiting (Count II), federal unfair competition (Count III), false designation of origin (Count IV), Florida trademark infringement under Fla. Stat. § 495.131 (Count V), violation of Florida's Deceptive and Unfair Trade Practices Act (Count VI), unauthorized use of name or likeness under Fla. Stat. § 540.08 (Count VII), common law misappropriation of name or likeness (Count VIII), and conversion (Count IX).

**B. LEGAL STANDARD**

"For a district court to grant a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *see also* Fed. R. Civ. P. 65. A preliminary injunction is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014). In deciding whether a party has made the requisite showing for entry of a preliminary injunction, "[a] district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted). "Preliminary injunctions are, by their nature, products of an expedited process often based upon an underdeveloped and incomplete evidentiary record." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171 (11th Cir. 2002).

### C. LEGAL ARGUMENT

**1. Dr. Crothers has established a substantial likelihood of success on the merits.**

"To demonstrate a substantial likelihood of success on the merits, the plaintiff must make a showing of likely or probable, but not certain, success at trial." *R. Miller Architecture, Inc. v. Edgington Enters., Inc.*, No. 6:06CV 871 ORL 19DAB, 2006 U.S. Dist. LEXIS 54635, 2006 WL 2226297, at *4 (M.D. Fla. Aug. 3, 2006).

*a. State and federal trademark infringement (Counts I & V)*

To prove trademark infringement, Dr. Crothers must show that: (1) he first adopted and used his mark within a certain area; (2) the mark has "special significance" by either being inherently distinctive or acquiring secondary meaning; (3) Defendants are using a confusingly similar mark to identify services rendered in competition with Plaintiff in the same trade areas; and (4) customer confusion as to the source of services is likely. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 (11th Cir. 1989) (citation omitted). The Eleventh Circuit has enumerated seven factors that the court should consider in determining whether there is a likelihood of confusion: 1) the type of mark at issue; 2) the similarity of the mark; 3) the similarity of products or services the mark represents; 4) the identity of purchasers and similarity of retail outlets; 5) the similarity of advertising media; 6) the defendant's intent; and 7) actual confusion. *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1548 (M.D. Fla. 1994) (citation omitted).

As alleged in Paragraph 11 of the Complaint, the Registered Mark is embodied in U.S. Trademark Reg. No. 6,079,316 ("the '316 Registration") on the Principal Register in connection with "Chiropractic Services; Chiropractic services for individuals suffering from injuries or exacerbation of previous conditions; Chiropractics; Physical therapy evaluation, identification, and management of movement dysfunction to restore, maintain, and promote optimal physical function preventing the onset, symptoms and progression of impairments, functional limitations, and disabilities resulting from disease, disorders, conditions, or injuries; Providing information relating to chiropractics" in International Class 044 ("the Registered Services") and having a registration date of June 16, 2020. Dkt. 1, ¶ 11. The '315 Registration, therefore, serves as *prima facie* evidence of (i) the validity of the Registered Mark; (ii) the validity of the registration of the mark; (iii) Dr. Crothers' ownership of the mark; (iv) Dr. Crothers' exclusive right to use the Registered Mark

in commerce on or in connection with the Registered Services; and (v) the distinctiveness of the Registered Mark. *See* 15 U.S.C. § 1115(a); *Vokal, Inc. v. Nelly*, 2005 U.S. Dist. LEXIS 20789, *1, *14 (M.D. Fla. Sept. 20, 2005) ("It is true, as the Plaintiff argues, that when the federal Patent and Trademark Office issues a certificate of registration without requiring a showing of secondary meaning, it provides *prima facie* evidence that the mark is suggestive or, if descriptive, has acquired secondary meaning."). The Registered Mark enjoys a priority-of-use date of May 2011, which predates any purported use of the mark by Defendants. Dkt. 1, ¶ 12.

Defendants are using a confusingly similar mark to identify services rendered in competition with Plaintiff in the same trade areas. Specifically, Defendants are direct competitors of Dr. Crothers', providing competing and identical healthcare services, i.e., chiropractic services, in the same geographic region, i.e., the Jacksonville, Florida area. Dkt. 1, ¶ 19. Since at least January of 2023, Defendants have been using the identical mark "DOC TONY" as a Google Adword and in Defendants' digital advertisements in connection with the offering and sale of similar or related chiropractic services in the same trade area, Jacksonville, Florida. Dkt. 1, ¶ 20. Examples of such use are reproduced in Paragraph 21 of the Complaint and in Exhibit E to the Complaint. Defendants' use of (1) the identical "DOC TONY" mark (2) in connection with identical and similar chiropractic services (3) in the same geographic trade area as Dr. Crothers, that is, Jacksonville, Florida, (4) in connection with the same or similar purchasers, namely, chiropractic patients in the Jacksonville region, and (5) in connection with similar digital advertising media, creates a high likelihood of consumer confusion in the marketplace between the Parties. Dkt. 1, ¶ 19-35, 45-46. Indeed, such confusion is and has damaged Dr. Crothers' brand, reputation, and consumer goodwill and is particularly problematic in light of the nature of the medical

services at issue, which can significantly affect an individual's life, health, and overall well-being. Dkt. 1, ¶ 22, 47-49.

In view of the foregoing, Dr. Crothers has demonstrated a substantial likelihood of success on the merits of his state and Federal trademark infringement claims (Counts I & V).

### b. _Violation of FDUPTA (Count VI)_

Regarding Dr. Crothers' claim in Count VI under the FDUTPA, pursuant to Section 501.204, Florida Statutes, Dr. Crothers must allege (1) a deceptive act or unfair practice; and (2) that he was aggrieved by the act or practice. _CareerFairs.com v. United Bus. Media LLC_, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011) (applying Florida law). The "FDUTPA is designed to protect consumers from deceptive acts that mislead consumers." _Id._ The Complaint alleges that:

> 87. Defendants' acts, as described above, constitute unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices.
> 88. Defendants' acts, as described above, are likely to deceive consumers into believing that the Defendants are affiliated with Dr. Crothers and the Registered Mark, and/or that Dr. Crothers authorizes, sponsors, approves or associates himself with the Defendants' chiropractic services and/or business practices.
> 89. Defendants' acts of unfair competition have resulted in, and will continue to cause, substantial and irreparable harm for which Dr. Crothers has no adequate remedy at law. Therefore, Dr. Crothers is entitled to injunctive relief.

Dkt. 1, ¶¶ 87-89. As explained in the Complaint, Defendants' acts include using, marketing, and displaying the Registered Mark as a Google Adword and in digital advertisements, without Dr. Crothers' permission, consent, or authorization. Dkt. 1, ¶¶ 20, 24, 32. Notably, "Defendants are direct competitors of Dr. Crothers', providing competing and identical healthcare services, i.e., chiropractic services, in the same geographic region, i.e., the Jacksonville, Florida area." Dkt. 1, ¶ 19. Consequently, Defendants' acts have caused (and will continue to cause) confusion among the

6

consuming public and consumers as to the source, approval, sponsorship or affiliation of Defendants' offered services with the goods and services of Dr. Crothers. Dkt. 1, ¶ 31. By using a mark that Defendants are not permitted or otherwise legally entitled to use, Defendants are unfairly competing with Dr. Crothers for patients in the same industry and in the same geographic region, causing Defendants to unfairly obtain patients and generate sales at Dr. Crothers' expense. Patients who intended to, or would have otherwise gone to, Dr. Crothers for chiropractic services are deceived and misled into obtaining these same services from Defendants, instead. Dkt. 1, ¶ 34.

Given that the Complaint alleges a deceptive act or unfair practice, and that Dr. Crothers was aggrieved by said act or practice, Dr. Crothers has a substantial likelihood of success on the merits of his FDUTPA claim.

### c. *Trademark Counterfeiting (Count II)*

"The Lanham Act imposes liability for trademark counterfeiting on any person who shall 'use in commerce . . . any counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .'" *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1312 (M.D. Fla. Sept. 30, 2013) (quoting *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1367 (N.D. Ga. 2003)). "A counterfeit mark is defined as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Id.* A showing of intent or bad faith is unnecessary to establish a claim for trademark counterfeiting in violation of section 1114. *Nike Inc.*, 274 F. Supp. 2d at 1369.

As mentioned *supra*, Dr. Crothers' "DOC TONY" mark is federally registered and embodied in the '316 Registration. Defendants have used and are using the identical "DOC TONY" mark within Defendants' online advertisements and Google Adwords in connection with the sale, offering for sale, distribution, and advertising of

chiropractic services which are identical, similar, and related to the chiropractic services rendered and offered by Dr. Crothers under and in connection with the Registered Mark. Dkt. 1, ¶¶ 20-21. Defendants' use of the spurious "DOC TONY" mark is likely to cause confusion or mistake or to deceive consumers into believing that Defendants' services originate from or are licensed, sponsored, approved or authorized by Dr. Crothers, or that Defendants are otherwise sponsored by, affiliated with, or related to Dr. Crothers, which they are not. Dkt. 1, ¶¶ 30-31. Accordingly, Dr. Crothers has demonstrated a substantial likelihood of success on his trademark counterfeiting claim (Count II).

   d.   _Federal Unfair Competition (Count III) & False Designation of Origin (Count IV)_

   The same legal standard applies to establishing claims for federal unfair competition and false designation of origin as that of establishing a claim for trademark infringement. _Sundari Found., Inc. v. Lotus House Recovery Ctr., LLC_, 2020 U.S. Dist. LEXIS 79063, *1, *8-9 (S.D. Fla. May 4, 2020) ("To prevail on the federal claims of unfair competition and false designation of origin, Plaintiff must demonstrate the same elements as its trademark infringement claims."); _Chanel, Inc. v. Italian Activewear of Fla., Inc._, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement."); _Ross Bicycles, Inc. v. Cycles USA, Inc._, 765 F.2d 1502, 1503 (11th Cir. 1985) ("To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a) a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods.") (citing _Conagra, Inc. v. Singleton_, 743 F.2d 1508, 1512 (11th Cir. 1984)); _see also_ 15 U.S.C. § 1125(a).

   As set forth above, the Complaint alleges that Dr. Crothers has a valid trademark, that Defendants used the Registered Mark without Dr. Crothers' consent, that such use was to promote and advertise Defendants' competing chiropractic

business, and this use has caused, and is likely to cause, confusion with members of the public. For all the reasons delineated herein, therefore, Dr. Crothers has also established a substantial likelihood of success on his federal unfair competition claim (Count III) and false designation of origin claim (Count IV).

   e. *Statutory & Common Law Misappropriation of Name or Likeness (Counts VII & VIII)*

   Courts typically consider common law and statutory misappropriation claims in tandem because the elements for both claims are substantially identical and overlap. *Love v. Jackson*, 2015 U.S. Dist. LEXIS 192906, *1, 10 (S.D. Fla. Oct. 22, 2015) ("Because the elements for statutory and common law misappropriation are 'substantially identical,' the Court considers the Complaint's common law and statutory misappropriation claims together."); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) ("The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation."); *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1313 (M.D. Fla. 2010). To state a misappropriation claim, a plaintiff must allege the defendant commercially used the value of the plaintiff's name for commercial, trade, or advertising purposes without the plaintiff's consent. Courts have construed use of a plaintiff's name or likeness for "purposes of trade" narrowly to mean the "direct promotion" of a commercial product or service. *Love v. Jackson*, 2015 U.S. Dist. LEXIS 192906, *1, 11.

   Here, the Complaint's well-pled allegations indicate that (1) Dr. Crothers is known and referred to as "Doc Tony"; (2) Dr. Crothers' name, likeness, persona and identity have significant commercial and personal value; (3) Defendants published Dr. Crothers' name, namely, "DOC TONY", in their online advertising and marketing, specifically, in their Google Adwords and in the content of the advertisement itself to promote, advertise and market Defendants' competing chiropractic services; (4) a

member of the general public would readily ascertain that Defendants' unauthorized use of the "DOC TONY" name features, references, and identifies Dr. Crothers; and (5) Defendants never sought or obtained permission or consent to use Dr. Crothers' name to advertise, promote, market, or endorse their business or any of the Defendants' services. Dkt. 1, ¶¶ 91, 94-95, 97-98. These factual averments are further supported and substantiated by the signed declaration of Dr. Crothers, attached hereto as **Exhibit A**.

A substantial likelihood of success on Dr. Crothers' statutory and common law misappropriation claims, therefore, has been shown.

### f.  *Conversion*

"Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013). Intangible assets like intangible interests in a business venture, time, effort, and expense have all been found to qualify as "property" sufficient to state a claim for conversion. *See CBS v. Garrod*, 622 F. Supp. 532, 536 (M.D. Fla. 1985) (recognizing an action for conversion based on a "wrongful taking of intangible interests in a business venture."); *Alticor Inc. v. UMG Recordings, Inc.*, 2015 U.S. Dist. LEXIS 166317, *1, *9 n.8 (finding that the "time, effort and expense" of producing sound recordings is precisely the type of intangible interest that supports a claim for conversion); *Stenograph v. Advantage Software*, 2006 U.S. Dist. LEXIS 111577, *1, *10 (S.D. Fla. Nov. 17, 2006) (finding that when conversion claim is based on intangible property like software, it is preempted by federal copyright law).

The property at issue in this case is intangible in nature and includes Dr. Crothers' name, image, likeness, and identity, and the Registered Mark and all consumer goodwill therein (which Dr. Crothers is the sole and exclusive owner of). Dkt. 1, ¶ 121. By using Dr. Crothers' "DOC TONY" name and mark without Dr. Crothers' permission, consent, or authorization (or a valid license), Defendants exercised dominion and control over said property to the detriment of Dr. Crothers. More specifically, Defendants' use and wrongful disposition of Dr. Crothers' intangible property for their own commercial and financial gain is inconsistent with his ownership rights in the property, e.g., the right to grant Defendants a license to use the Registered Mark and its associated goodwill, the right to consent to the use of his name, etc. In this way, therefore, Defendants converted Dr. Crothers' property, irreparable harming him, his business, and the goodwill associated therewith in the process.

Accordingly, Dr. Crothers has a substantial likelihood of success on his conversion claim.

**2. In the absence of an injunction, Dr. Crothers will suffer irreparable harm.**

Dr. Crothers has no adequate remedy at law and will suffer irreparable harm absent a preliminary injunction. "Trademark infringement by its nature causes irreparable harm." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995). The injuries Dr. Crothers faces include consumer confusion and the loss of (or damage to) customers, goodwill, and reputation resulting from the sale of substandard chiropractic services under the DOC TONY mark and brand. *See My Energy Monster v. Gawrych*, 2020 U.S. Dist. LEXIS 240023, *1, *42 (M.D. Fla. Dec. 18, 2020) ("[T]he loss of customers and goodwill is an irreparable injury."). "A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly

11

similar mark that supplies the substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005).

The Eleventh Circuit has said that "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998). Defendants' unauthorized use of the Registered Mark presents a clear threat of irreparable harm to Dr. Crothers' name and goodwill. Both his personal and professional brand, reputation, and consumer goodwill is likely to be irreparably harmed, particularly in light of (1) the strong showing of likelihood of confusion given Defendants' *identical* use of the Registered Mark in connection with *identical* chiropractic services in the *identical* geographic Jacksonville region as Dr. Crothers; and (2) the nature of the medical services offered under the Registered Mark, i.e., chiropractic services, are such that quality control oversight is crucial and the lack thereof may result not only in dissatisfied consumers but, more importantly, injured patients. *See FSC Franchise Co., LLC v. Express Corporate Apparel, LLC*, 2009 U.S. Dist. LEXIS 92879, *1, *11 (M.D. Fla. June 8, 2009) ("Plainly, the defendants' distribution of a product that is associated with the plaintiff without quality control oversight may tarnish the mark and the goodwill associated with it."). In turn, this has the potential to jeopardize Dr. Crothers' medical license(s), certification(s), professional reputation, and patient following if consumers associate Defendants' inferior chiropractic services with those offered by Dr. Crothers or if they attribute Defendants' substandard services, medical malpractice, negligence, etc. to Dr. Crothers and his medical practice.

In the absence of a preliminary injunction, therefore, Dr. Crothers will suffer irreparable and far-reaching harm that could jeopardize both his medical practice and business, as well as his professional and personal reputation and goodwill.

### 3. The harm suffered by Dr. Crothers in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued.

Defendants would not suffer any cognizable harm from an injunction enjoining them from further use of the "DOC TONY" mark because Defendants have no right to use the mark absent a license or other consent granted by Dr. Crothers. As this Court previously articulated in the context of another trademark infringement case:

> In this instance, the balance of potential harm to the remaining Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is minimal and far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued. Indeed, Plaintiff will continue to suffer diversion of customers, loss of the ability to control the quality and reputation of its trademarked goods, and potential injury to the brand, while Defendants possess no legally cognizable rights or protectable interests in continuing to misappropriate and misrepresent the brand in the context of the sale of their goods or to otherwise trade on the goodwill of Plaintiff. As such, the balance of harm weighs in favor of Plaintiff.

*Ain Jeem, Inc. v. Individuals P'ships, & Unincorporated Ass'ns Identified Schedule "A"*, 2021 U.S. Dist. LEXIS 135286, *1, 23 (M.D. Fla. July 19, 2021); *see also CITGO Petroleum Corp. v. Mid-State Energy, Inc.*, 2012 U.S. Dist. LEXIS 63159, *1, *8 (M.D. Fla. May 4, 2012) (finding that defendant would not be harmed by the issuance of a preliminary injunction because "[w]hile a preliminary injunction will prevent MSE from continuing to use CITGO's marks and thus may result in a loss of revenue, any such purported losses are inapposite."); *Clayton v. Howard Johnson Franchise Systems, Inc.*, 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988) ("In contrast, [Defendant] would suffer no legitimate harm since the preliminary injunction would only prevent them from using marks which they are not entitled to use."); *Tiramisu Int'l, LLC v. Clever Imports, LLC*, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010) (citation and internal quotations omitted) (explaining that "the public as a whole has a paramount interest not to be confused by defendant's infringement").

Likewise, Dr. Crothers will continue to suffer diversion of customers, loss of the ability to control the quality and reputation of his medical services, and injury to his brand, identity, reputation, and consumer goodwill that he has diligently amassed over the years. The only loss that will be suffered by Defendants, meanwhile, is a loss of revenue resulting from their inability to continue infringing on Dr. Crothers' trademark and privacy rights. On balance, the harm suffered by Dr. Crothers far outweighs any potential harm that may be suffered by Defendants if the injunction issues. For this reason, granting a preliminary injunction is warranted.

**4. The issuance of an injunction would not disserve the public interest.**

The public interest would actually be *served* by the issuance of a preliminary injunction under the present circumstances as it would help ensure that consumers are not deceived by the improper branding of Defendants' services and prevent consumer confusion in the marketplace. *See, e.g.*, *CITGO Petroleum Corp. v. Mid-State Energy, Inc.*, 2012 U.S. Dist. LEXIS 63159, *1, *8 ("The public interest will be served by the issuance of a preliminary injunction. Specifically, a preliminary injunction will help insure that consumers are not deceived by the improper branding of products."); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace."). Granting a preliminary injunction under these facts would protect Dr. Crothers' trademark interests, encourage respect for the law, prevent customer confusion as to the source of the services, and protect the public from being defrauded by the illegal sale of counterfeit services. *Ain Jeem, Inc. v. Individuals P'ships, & Unincorporated Ass'ns Identified Schedule "A"*, 2021 U.S. Dist. LEXIS 135286, *1, 24. Indeed, "[i]n a trademark infringement case, the public interest is served by preventing consumer confusion in the marketplace." *Id.* at *23-24.

In view of the foregoing, the issuance of a preliminary injunction would not disserve the public interest.

**5.  The amount of a security bond pursuant to Rule 65(c), Federal Rules of Civil Procedure.**

Federal Rule of Civil Procedure 65(c) conditions the issuance of a preliminary injunction or temporary restraining order on the movant giving security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." However, "the amount of security required by the rule is a matter within the discretion of the trial court ...[, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Notably, "[t]he burden is on the party seeking security from a wrongful injunction to establish a rational basis for the amount of the bond." *Abbey Carpet Co. v. Abbey Flooring, LLC*, 2018 U.S. Dist. LEXIS 73273, *1, *18 (M.D. Fla. Apr. 13, 2018).

To the extent that Defendants fail to seek a bond or provide any evidence in support thereof, Dr. Crothers respectfully requests the Court exercise its discretion to not require a security bond at all. *See id.* (not requiring any security where defendant had not sought a bond nor provided any evidence to establish a rational basis for a bond); *Jth Tax Llc v. Rodrigo Da Silva*, 2020 U.S. Dist. LEXIS 108126, *1, *8 (M.D. Fla. Mar. 11, 2020) (no bond required); *Woodard-Cm v. Sunlord Leisure Prods.*, 2020 U.S. Dist. LEXIS 173107, *1, *10 (S.D. Fla. Aug. 17, 2020) (no bond required). Alternatively, should the Court elect to require security, Dr. Crothers respectfully requests that such bond be set at $10,000 given the significant likelihood that Dr. Crothers will succeed on the merits of this case. *See Ain Jeem, Inc. v. Individuals P'ships, & Unincorporated Ass'ns Identified Schedule "A"*, 2021 U.S. Dist. LEXIS 135286, *1, *25 (requiring $10,000 bond); *Paris Banh Mi v. Paris Banh Mi & Tea Cafe*, 2021 U.S. Dist.

LEXIS 137258, *1, *15-16 (M.D. Fla. Apr. 2, 2021) (same); *3M Co. v. Geftico, LLC*, 2020 U.S. Dist. LEXIS 76163, *1, *7 (M.D. Fla. Apr. 30, 2020) (same).

CONCLUSION

In consideration of the foregoing, Dr. Crothers respectfully requests the Court GRANT a preliminary injunction ordering Defendants Blum Health PLLC and Nathalie Blum and their officers, agents, servants, employees, attorneys, successors and assigns and all persons in active concert or participation with any of them, individually or collectively, be enjoined from:

a. Using the "DOC TONY" Registered Mark, or any other name or mark likely to cause confusion with the "DOC TONY" Registered Mark, in connection with the advertisement, sale, rendering, or offering of any chiropractic (or related) goods or services;

b. Using the "DOC TONY" Registered Mark in any digital, print, or online advertisements, search engine optimization, banners, labels, signs, prints, packages, or other promotional or sales materials;

c. Doing any other act or thing likely to confuse, mislead or deceive others into believing that Defendants' goods or services emanate from, or are connected with, sponsored by or approved by Dr. Crothers;

d. Destroying any false advertisements or counterfeit or infringing goods, labels, signs, prints, packages, wrappers, receptacles, advertisements or other printed materials bearing the "DOC TONY" Registered Mark or any reproduction, counterfeit, copy or colorable imitation of it; and

e. Assisting, aiding or abetting any person or entity in engaging in any of the activity prohibited in paragraphs (a) through (d) above.

Dated: August 31, 2023                    Respectfully submitted,

16

s/Mark C. Johnson
Mark C. Johnson
Florida Bar No. 84365
MJ@johnsondalal.com
JOHNSON DALAL
111 N. Pine Island Road, Suite 105
Plantation, FL 33324
Phone: (954) 507-4500

*Counsel for Plaintiff Anthony Crothers*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I further certify that a true and correct copy of the foregoing is being served this day on all parties and counsel of record, via transmission of Notices of Electronic Filing generated by CMF/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated: August 31, 2023                    Respectfully submitted,

s/Mark C. Johnson
Mark C. Johnson
Florida Bar No. 84365
MJ@johnsondalal.com
JOHNSON DALAL
111 N. Pine Island Road, Suite 105
Plantation, FL 33324
Phone: (954) 507-4500

*Counsel for Plaintiff Anthony Crothers*